**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

KAITLYN KILLGO,

     Plaintiff,

v.

THE WASHINGTON UNIVERSITY,
d/b/a WASHINGTON UNIVERSITY,

WASHINGTON UNIVERSITY
DETECTIVE JEFFREY BARNHOUSE,

ST. LOUIS COUNTY,

and

EUREKA POLICE OFFICER
TORRE KUELKER,

     Defendants.

Case No. 4:25-cv-01407-CMS

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS WASHINGTON**
**UNIVERSITY AND JEFFREY BARNHOUSE TO DISMISS**
**COUNTS II, IV, V, AND VII OF THE AMENDED COMPLAINT**

Plaintiff Kaitlyn Killgo has filed a six-count Amended Complaint asserting violations of federal constitutional rights and state common law arising out of an investigation of the theft of a police helmet. Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Washington University (the "University") and Washington University Police Department Detective Jeffrey Barnhouse (together, the "University Defendants") move to dismiss Counts II, IV, V and VII of the Amended Complaint for failure to state claims upon which relief may be granted.

**Relevant Factual Allegations**[1]

Plaintiff Kaitlyn Killgo, who does not allege any affiliation with the University, has filed an Amended Complaint asserting violations of her federal constitutional rights and Missouri state law.  Plaintiff alleges she was improperly detained in connection with an investigation by the Washington University Police Department ("WUPD") of the theft of a police helmet that occurred during a protest on the University campus on April 27, 2024.  Amended Complaint (hereinafter "AC"), ¶¶1, 47-48, 89.  Plaintiff attended the protest and was arrested when she and others refused to leave the campus.  AC, ¶¶33, 37.   Plaintiff denies involvement in the theft.  AC, ¶¶34-36.

Plaintiff alleges she was wrongfully detained by Eureka Police Officer Torre Kuelker in September 2024, several months after the protest, pursuant to a "Wanted" notice allegedly entered into the REJIS law enforcement system by WUPD Detective Barnhouse.  AC, ¶¶50-60, 68.  Detective Barnhouse, like other members of the WUPD, is a Missouri peace officer deputized by St. Louis County.  AC, ¶167.  Plaintiff alleges that when she refused to be interviewed by the WUPD after she was released in Eureka, her attorney was told that another Wanted would be issued or that an arrest warrant would be obtained.  AC, ¶¶80-87.  Despite the fact that the Eighth Circuit in 2022 declined to hold the use of a Wanted facially unconstitutional, *Furlow v. Belmar,* 52 F.4th 393, 404 (8th Cir. 2022), Plaintiff alleges that the use of a Wanted in her specific circumstance violated her constitutional rights and that she experienced emotional distress as a result.  AC, ¶¶124-125.

---

[1] Solely for purposes of the motion to dismiss, the University Defendants treat the allegations in the Amended Complaint as if they were true.

Plaintiff's Amended Complaint includes six counts, four alleging constitutional violations under 42 U.S.C. § 1983 (Counts I, II, V and VII) and two pendent state law claims (Counts III and IV):

Count I – Unlawful Seizure in Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Kuelker, Barnhouse)

Count II – First Amendment Retaliation Against Plaintiff for Exercising her Fifth and Fourth Amendment Rights (Barnhouse)

Count III – False Arrest (Barnhouse, Washington University)

Count IV – Intentional Infliction of Emotional Distress (Barnhouse, Washington University)

Count V – *Monell* Claim for Unconstitutional Custom and Practice of Using Wanteds in Violation of Fourth Amendment (Washington University, St. Louis County)

Count VII (*sic*)[2] – Conspiracy to Deprive Plaintiff of her Civil Rights under 42 U.S.C. § 1983 (Barnhouse, Kuelker, Washington University, St. Louis County)

While the University Defendants deny liability under every Count, Defendants move to dismiss Counts II, IV, V and VII for failure to state a claim under applicable federal and state law. With regard to the federal claims, Count II, alleging retaliation against Plaintiff for refusing to give a statement about the theft, is a misapplication of the First Amendment retaliation doctrine. A cause of action for First Amendment retaliation is to protect the content of speech, not the right to remain silent. Count V fails to state a claim because it does not allege facts to show the continuing, widespread and persistent pattern of unconstitutional conduct by the University necessary to support a *Monell* claim. And Count VII, alleging conspiracy to violate Plaintiff's civil rights, must be dismissed because it does not allege facts sufficient to show a meeting of the minds among the four alleged conspirators to deprive Plaintiff of her constitutional rights.    Finally,    Count    IV

---

[2] The Amended Complaint does not include a Count VI.

purports to assert a state law claim of intentional infliction of emotional distress, but fails to plead the necessary elements of a medically diagnosable injury and that the sole intention of the University Defendants was to inflict emotional distress.

**<u>Argument</u>**

## I.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and a complaint will not survive a motion to dismiss if it tenders "naked assertion[s] devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Therefore, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

A complaint has "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) ("A district court … need not conjure up unpled allegations to save a complaint.") (internal quotation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, *quoting* Fed. R. Civ. P. 8(a)(2).

These standards serve to "eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Missouri,* 244 F.3d 623, 627 (8th Cir. 2001) (affirming dismissal of claims asserted under § 1983 where plaintiff failed to plead facts showing a due process violation).

### **FEDERAL CLAIMS**

### II.    **Plaintiff's First Amendment Retaliation Claim (Count II) Against Det. Barnhouse Fails to State a Valid Claim**

In Count II, Plaintiff alleges that Detective Barnhouse retaliated against her in violation of the First Amendment for exercising her constitutional rights under the Fourth and Fifth Amendments.  She alleges that she invoked her Fifth Amendment right to counsel when she was detained by the Eureka police.  AC, ¶129.  Plaintiff was allegedly held in custody for several hours because she was unwilling to make a voluntary statement about the helmet theft.  AC, ¶131.  She contends that "[t]his constitutes an adverse action taken only because of Ms. Killgo's exercise of constitutionally protected speech by invoking her Fifth Amendment rights."  AC, ¶132.

Plaintiff also alleges that she subsequently "invoked her Fourth Amendment right to 'walk away from questioning' by refusing to go to WUPD's station to make a voluntary statement."  AC, ¶133.  She claims that in response to this invocation, "Detective Barnhouse then threatened to have [her] arrested, either pursuant to another Wanted or a warrant, for refusing to make a voluntary statement at WUPD's station," which had "[t]he intended effect" of "discourag[ing] or punish[ing] [her] for her constitutionally protected speech invoking her Fourth and Fifth Amendment rights."  AC, ¶¶134-135.

The United States Supreme Court has recognized a cause of action on the part of individuals who have experienced retaliation by the government for exercising their First Amendment free speech rights. *See, e.g., Wilkie v. Robbins,* 551 U.S. 537, 555 (2007); *Hartman v. Moore,* 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out"). However, retaliation for mere conduct, or the exercise of other constitutional rights that do not involve the content or expression of speech, is not actionable under the First Amendment. *See Wilkie,* 551 U.S. at 555-56 (listing Fifth Amendment retaliation as a different claim than First Amendment retaliation); *see also Molina v. City of St. Louis, Missouri,* 59 F.4th 334, 339 & n.1 (8th Cir. 2023) (analyzing First Amendment retaliation claims of individuals targeted with tear gas at protest and distinguishing between protected expression and unprotected conduct like standing near a police officer or refusing a police officer's request).

The elements of a First Amendment retaliation claim include:

"(1) [T]hat [plaintiff] is engaged in a protected First Amendment activity, (2) that [a government official] 'took an adverse action that would chill a person of ordinary firmness from continuing in the protected activity,' and (3) that retaliatory animus was a 'but-for cause' of [plaintiff's] injury." *Stearns v. Wagner,* 122 F.4th 699, 703 (8th Cir. 2024) (quoting *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023)).

*McReynolds v. Hansen,* 2025 WL 1082350, *5 (D. Minn. Apr. 10, 2025). Here, Count II is subject to dismissal because Plaintiff, in declining to make a statement to law enforcement, was not engaged in a protected First Amendment activity.

In *McReynolds,* plaintiff Barry McReynolds attempted to assert a First Amendment retaliation claim against a state trooper who retaliated against him by conducting a pat-down search after McReynolds refused to answer the trooper's questions. *Id.* at 1. The court emphasized that only speech that occurred before the retaliatory conduct was relevant to the First Amendment

claim. *Id.* at 5. However, "[b]efore the search, McReynolds said nothing beyond expressing his desire not to answer Hansen's questions." *Id.* The court could find no authority "holding that expressing a desire not to answer questions posed by law enforcement constitutes protected First Amendment activity." *Id.* In fact, the court noted the jurisprudence was to the contrary. It cited multiple authorities, including *Alexander v. City of Round Rock,* 854 F.3d 298, 309 (5th Cir. 2017), where the Fifth Circuit affirmed the dismissal of a First Amendment retaliation claim, noting that the plaintiff "points to no case supporting the contention that there is a clearly established First Amendment right not to answer an officer's questions during a traffic stop." Similarly, Plaintiff Killgo's claim of First Amendment retaliation for exercising her Fifth Amendment right to remain silent fails as a matter of law.

Plaintiff's attempt to bolster her First Amendment claim by asserting a Fourth Amendment "right to 'walk away from questioning,'" AC, ¶133, fares no better. This is simply a repackaging of her refusal to make a statement and again alleges no expressive speech or conduct implicating the First Amendment. *See Molina,* 59 F.4th at 339 & n.1 (refusing a police officer's request is not protected speech or conduct).

Accordingly, the Court should dismiss Plaintiff's First Amendment retaliation claim in Count II for failure to state a cause of action.

### III.     Plaintiff's *Monell* Claim (Count V) Fails to Sufficiently Allege an Unconstitutional Custom and Practice on the Part of the University

In Count V of the Amended Complaint, Plaintiff seeks to hold the University and St. Louis County liable for her alleged unconstitutional detention in Eureka under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). In *Monell,* the United States Supreme Court held that local governments could be sued under § 1983 for unconstitutional policies or customs. *Id.* at 694. *Monell* liability has been extended under limited circumstances to private entities acting under

color of state law.  *See Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004).  However, the private entity is subject to liability only for *its own* unconstitutional policies or customs.  *Id.* at 590-91 (emphasis added) (affirming dismissal of hospital in action under § 1983 where complaint failed to allege facts to support that hospital had a policy or custom of illegal involuntary commitments).

To sufficiently allege an actionable policy or custom under *Monell* requires a showing of "'a continuing, widespread, persistent pattern of unconstitutional misconduct'" that led to plaintiff's injury.  *Id.*, *quoting S.J. v. Kansas City Mo. Pub. Sch. Dist.,* 294 F.3d 1025, 1028 (8th Cir. 2002).  "Conclusory assertions that are unsupported by facts will not satisfy this pleading standard."  *Watkins v. City of St. Louis, Missouri,* 102 F.4th 947, 953 (8th Cir. 2024) (affirming dismissal of motorist's *Monell* claim against municipality alleging excessive force in traffic stop for failure to allege facts supporting an unconstitutional policy or custom).

Here, Plaintiff has failed to allege facts to support a *Monell* claim against the University. Plaintiff does not allege the University adopted an official policy authorizing the unconstitutional use of Wanteds.  And her allegation in ¶181 of the Amended Complaint of an "unconstitutional custom" of the WUPD in enforcing Wanteds is conclusory and devoid of factual support.  The only unconstitutional use of a Wanted by the University and WUPD alleged in the Amended Complaint is with respect to Plaintiff herself.  Even assuming Plaintiff's detention in Eureka was unconstitutional, a single instance cannot as a matter of law establish a custom.  The Eighth Circuit so held in *Watkins,* 102 F.4th at 954, where plaintiff Watkins did not allege facts plausibly suggesting a continuing, widespread, persistent pattern of unconstitutional misconduct other than in conclusory allegations.  The only example alleged in Watkins' complaint was plaintiff's own arrest.  *Id.*  Therefore, the Eighth Circuit held the *Monell* claim was properly dismissed because

"an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Id.* (internal quotation omitted).[3]

Accordingly, Count V fails to state a claim of *Monell* liability against the University and must be dismissed.

### IV.    Plaintiff's Claim of Conspiracy to Deprive Her of Her Constitutional Rights (Count VII) Fails to Allege the Requisite Meeting of the Minds

In Count VII, Plaintiff purports to allege a cause of action under § 1983 for a conspiracy among the four defendants to deprive her of her constitutional rights.  In support of this purported conspiracy, Plaintiff alleges that "St. Louis County and WUPD were members of the conspiracy because either one or both entities allowed Defendant Barnhouse, a private employee of [WUPD], access and ability through the REJIS software to send out arrest orders to any officer in the state of Missouri without meaningful restrictions on his ability to do so constitutionally."  AC, ¶203.

Plaintiff further alleges:

(1) "Detective Barnhouse initiated a plan to unlawfully arrest and detain [her] by issuing an unconstitutional Wanted."  AC, ¶204.

(2) "Defendant Kuelker joined the conspiracy when he took [her] into custody based only on a REJIS entry with no independent generation of probable cause."  AC, ¶205.

---

[3] Even if the Amended Complaint sufficiently alleges an unconstitutional custom of St. Louis County, which the University denies, that custom cannot be imputed to the University. *See, e.g.*, *Crumpley-Patterson,* 388 F.3d at 590 (corporation acting under color of state law will only be held liable for its own unconstitutional policy); *Hippele v. Palm Beach County Bd. of County Com'rs*, 2010 WL 3123258, at *5 (S.D. Fla. Aug. 9, 2010) (holding policies and customs of sheriff in providing mental health care at jail could not be imputed to private entity contractor; plaintiff was required to state facts showing a policy or custom of private entity caused injuries to survive dispositive motion); *see also Davis v. St. Louis Cnty., Mo.*, 2015 WL 758218, at *12 (E.D. Mo. Feb. 23, 2015) (holding diabetic prisoner failed to allege facts regarding the removal of his insulin pump that would support inference that resulting injuries were caused by an unconstitutional policy or custom of the prison medical provider, Saint Louis University, when all allegations were directed to actions of others).

(3) "In furtherance of the conspiracy, the Defendants committed the following overt acts:

    a. Issuing an unlawful 'Wanted for Questioning' on Ms. Killgo . . .

    b. Facilitating the warrantless arrest and detention of Ms. Killgo by communicating with Eureka police department.

    c. Threatening to again arrest Ms. Killgo for exercising her constitutional rights to be free from a custodial interrogation without counsel. . . ."

AC, ¶206.  Plaintiff asserts that these "acts in furtherance of the conspiracy violated [her] constitutional rights under the Fourth, Fifth, and Fourteenth Amendments."  AC, ¶207.

To survive a motion to dismiss, a plaintiff must allege "'**specific facts** tending to show a 'meeting of the minds' among the alleged conspirators.'"  *Gibbs v. City of Sikeston*, 2025 WL 2096522, at *11 (E.D. Mo. July 25, 2025) (emphasis in original), *quoting Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (affirming dismissal where the factual allegations in complaint did "not directly or indirectly suggest such a 'meeting of the minds.'").  The alleged conspirators must have "reached an agreement."  *Gibbs,* 2025 WL 2096522, at *11 (citations omitted).  Allegations of multiple contacts between the putative conspirators, without more, do not reasonably support a meeting of the minds.  *See Mershon v. Beasley*, 994 F.2d 449, 451-52 (8th Cir. 1993) ("[C]ontacts [between parties], by themselves and without more" do not allow the inference of "any mutual understanding" in a § 1983 action).  The complaint must include particularized and specific factual allegations demonstrating that the defendants reached an agreement to violate the plaintiff's rights.  *Id.*

Here, Plaintiff fails to allege facts sufficient to establish a plausible claim for conspiracy under § 1983.  The Amended Complaint does not include any factual allegations indicating a meeting of the minds among Detective Barnhouse, Officer Kuelker, St. Louis County, and Washington University.  Plaintiff alleges no contacts between the University and any other

defendant regarding the issuance of the Wanted or Plaintiff's detention.  Plaintiff expressly alleges that "Defendant Kuelker did not speak with Defendant Barnhouse or any member of WUPD before taking Ms. Killgo into custody."  AC, ¶63.  And allegations that Officer Kuelker and Detective Barnhouse each independently accessed the REJIS system do not, without more, establish that the officers reached a meeting of the minds to violate Plaintiff's constitutional rights.  *See, e.g., Mershon*, 994 F.2d at 452 (multiple contacts without more does not allow the inference that a meeting of the minds to conspire existed); *see also Ivester v. Lee*, 991 F. Supp. 1113, 1124 (E.D. Mo. 1998) ("The fact that several individuals engaged in investigating suspected criminal activity, or held a common belief that a crime had been committed, does not establish a conspiracy."). [4]

Accordingly, since Plaintiff has failed to allege the necessary facts to show a meeting of the minds, the Court should dismiss the conspiracy claim in Count VII for failure to state a claim upon which relief can be granted.

### STATE LAW CLAIM

### V.    Plaintiff Fails to Allege the Necessary Elements of a State Law Claim of Intentional Infliction of Emotional Distress (Count IV) and Therefore that Count Must Be Dismissed

In Count IV, Plaintiff attempts to allege a Missouri state law claim of intentional infliction of emotional distress against the University Defendants.  Plaintiff alleges that, in a telephone call

---

[4] Moreover, the University cannot be liable for conspiracy based on a theory of *respondeat superior*.  Allegations that the University and St. Louis County allowed Detective Barnhouse to issue Wanteds does not establish that the defendants agreed to violate Killgo's constitutional rights. *See Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 860 (8th Cir. 2024) (holding conclusory allegations that supervisor had authority to control operations or authorized constitutional violations lacked detail and specificity required to show meeting of the minds among conspirators to violate a constitutional right; s*ee also Gibbs*, 2025 WL 2096522, at *11 ("The claim against the City of Sikeston also fails because it cannot be held liable [for conspiracy] on a *respondeat superior* theory, and the Third Amended Complaint is devoid of non-conclusory allegations regarding the claim of municipal liability.").

with her attorney, AC, ¶¶80-92, Det. Barnhouse threatened to have her arrested because she refused to be questioned about the helmet theft. AC, ¶157. Plaintiff alleges this was outrageous conduct that left Plaintiff fearful and anxious. AC, ¶¶162, 165.

Under Missouri law, a claim for intentional infliction of emotional distress must allege "'extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm.'" *Bloodworth v. Kansas City Board of Police Commissioners,* 89 F.4th 614, 623 (8th Cir. 2023), *quoting K.G. v. R.T.R.,* 918 S.W.2d 795, 799 (Mo. banc 1996). As the Eighth Circuit emphasized in *Bloodworth,* "'Missouri case law reveals very few factual scenarios sufficient to support a claim for [intentional infliction of emotional distress].'" 89 F.4th at 623 (internal quotation omitted). The Court held that an intentional infliction of emotional distress claim against a police officer who allegedly threatened plaintiff with further police action and investigations during a telephone call was insufficient as a matter of law to meet "these rigorous criteria." *See id.*

Here, Plaintiff Killgo has not alleged a valid claim of intentional infliction of emotional distress. As in *Bloodworth,* she has failed to allege facts showing extreme and outrageous conduct by the University Defendants. Moreover, she has failed to plead the necessary element of bodily harm. She alleges no physical injury, but only that she experienced "fear, apprehension, depression, anxiety, consternation, and emotional distress" as a result of Det. Barnhouse's conduct. AC, ¶166. Such generalities do not meet the standard of pleading bodily harm. To state a claim for intentional infliction of emotional distress where no bodily harm in the form of physical injury has occurred, a plaintiff must allege facts that show a mental injury that is "'medically diagnosable'" and "'of sufficient severity so as to be medically significant.'" *In the Matter of W.N.,* 711 S.W.3d 892, 896 (Mo. App. E.D. 2025), *quoting Childs v. Willams,* 825 S.W.2d 4, 10

(Mo. App. E.D. 1992).  No such medically diagnosable injury is alleged here.  *See, e.g., Kirsten v. Cape Royale at Ski Harbor Condo. Owners Ass'n Inc.,* 2022 WL 7108312, at *3 (W.D. Mo. Oct. 12, 2022) (stress and anxiety do not constitute bodily harm required to establish intentional infliction of emotional distress); *Rooney v. National Super Markets, Inc.,* 668 S.W.2d 649, 651-52 (Mo. App. E.D. 1984) (nausea and loss of sleep without need for medical attention did not amount to medically significant harm).

Another essential element of a claim for intentional infliction of emotional distress is that the defendant's "conduct must be intended **only** to cause extreme emotional distress to the victim." *Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. banc 1997) (emphasis added) (internal quotation omitted) (affirming dismissal where allegations did not support inference that defendant's sole purpose was to invade plaintiff's interest in freedom from emotional distress).  When the allegations support a conclusion that the conduct had another purpose, the plaintiff fails to state a claim for intentional infliction of emotional distress.  *Jordan v. Watson*, 2025 WL 843240, at *6 (E.D. Mo. March 18, 2025); *see also Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 448 (Mo. App. W.D. 2000) (holding claim for intentional infliction of emotional distress not established where there was business purpose for defendant's conduct).  At the motion to dismiss stage, courts examine the whole complaint to determine if the conduct was undertaken solely for the purpose of causing emotional harm.  *See, e.g., Hoffmann Bros Heating & Air Conditioning, Inc. v. Hoffmann*, 2020 WL 5569989, at *5 (E.D. Mo. Sept. 17, 2020) (dismissing intentional infliction of emotional distress claim where allegations in other counts contradicted assertion that defendants' conduct "was intended only to cause extreme emotional distress").  "Courts need not accept as true factual assertions that are contradicted by the complaint itself."  *Id.* (internal quotations omitted).

Here, Plaintiff alleges that Detective Barnhouse threatened to arrest her for lawfully exercising her constitutional right to refuse questioning. AC, ¶¶160-161. She further asserts that "the sole intent in Detective Barnhouse's conduct was to gain compliance through causing [her] emotional distress." AC, ¶¶163-164. However, Plaintiff's own allegations contradict any assertion that the defendant's sole purpose was to inflict emotional harm. Plaintiff asserts that Detective Barnhouse's "intent" was to obtain a statement, AC, ¶163, "to gain compliance." AC, ¶164, to persuade her to "turn in 'the property,'" AC, ¶87, and to attempt to influence her "to waive her constitutional rights." AC, ¶169. These allegations, by Plaintiff's own framing, describe an intent to pursue an investigative or law enforcement objective, not to inflict extreme or severe emotional distress. Accordingly, Plaintiff's allegations do not plausibly allege conduct that was motivated solely by an intent to cause emotional harm.

For the foregoing reasons, the Court should dismiss Count IV for failure to state a valid claim.

## Conclusion

Defendants Washington University and Jeffrey Barnhouse respectfully request that the Court dismiss Counts II, IV, V, and VII of the Amended Complaint.

**HAAR & WOODS, LLP**

/s/ Lisa A. Pake
Robert T. Haar, #30044MO
Lisa A. Pake, #39397MO
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 (Facsimile)
roberthaar@haar-woods.com
lpake@haar-woods.com

*Attorneys for Defendants Washington*
*University and Jeffrey Barnhouse*

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 21st day of January, 2026, the foregoing was filed electronically with the Clerk of Court to be served by operation of the CM/ECF system upon all counsel of record.


/s/ Lisa A. Pake