UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KAITLYN KILLGO,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON UNIVERSITY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-cv-01407-CMS |

**MEMORANDUM AND ORDER**

Before the Court are Defendants Washington University, Jeffrey Barnhouse, and Torre Kuelker's Motions to Dismiss (Docs. 48 and 50). For the reasons stated herein, the Motions are granted.

**BACKGROUND**

**I. Factual Background**

The following allegations from the Amended Complaint (Doc. 43) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

On April 27, 2024, Plaintiff Kaitlyn Killgo attended an anti-war protest on Defendant Washington University's campus. (Doc. 43 ¶ 33). Plaintiff denies that she took or possessed any property of the Washington University Police Department (WUPD), nor did Plaintiff know of "anyone taking any property of WUPD." *Id.* ¶¶ 34–36.

On August 12, 2024, Plaintiff participated in another protest. *Id.* ¶ 42. She alleges that, at that protest, "either [Defendant] Detective Jeffrey Barnhouse or Marc Wasem," both WUPD officers, shouted "Killgo!" and "We want our helmet back!" from "[a]n unmarked black suburban vehicle." *Id.* ¶¶ 43–48. On Labor Day Weekend 2024, Plaintiff and her friend drove through the

municipality of Eureka, Missouri, where Defendant Officer Torre Kuelker conducted a traffic stop. *Id.* ¶¶ 50–53. Defendant Kuelker stated "he had pulled her over due to her license plate being displayed in the rear window." *Id.* ¶ 55. At the time, Plaintiff's "license plate was fastened securely in her rear window [and] [t]he entirety of her license plate was clearly visible and legible." *Id.* ¶ 56. When Plaintiff's friend refused to provide identification, "Defendant Kuelker revealed that he had pulled the car over because there was a Wanted on [Plaintiff]'s vehicle that necessitated him identifying everyone in the car." *Id.* ¶ 57.

Thereafter, Defendant Kuelker, without speaking to Defendant Barnhouse "or any member of WUPD," informed Plaintiff that "WUPD officers wanted to speak with her," detained her, and took her to the Eureka Police Department. *Id.* ¶¶ 59–61, 63. Plaintiff contacted a volunteer attorney who "learned that WUPD and Eureka police communicated solely about transferring [Plaintiff] into WUPD custody" and that Defendant Barnhouse "had put out a Wanted" for Plaintiff. *Id.* ¶¶ 67–68. Plaintiff was released after approximately four hours in custody when the volunteer attorney represented that Plaintiff would submit to an interview with WUPD. *Id.* ¶ 73.

Upon being released, Plaintiff retained counsel who spoke with Defendant Barnhouse. *Id.* ¶¶ 74–75. Defendant Barnhouse asked Plaintiff numerous times to "come in for an interview," which Plaintiff refused. *Id.* ¶ 76–81. Defendant Barnhouse then told Plaintiff she "had to" come in and, if she did not, he would "put out the Wanted again." *Id.* ¶¶ 82, 84. After speaking with Defendant Barnhouse's supervisor, Plaintiff's counsel learned that WUPD believed Plaintiff had stolen a police riot helmet. *Id.* ¶¶ 88–89. Plaintiff "submitted a Sunshine Request to receive information about her arrest and the WUPD policies," which Defendant Washington University denied because it is a private institution not subject to such requests. *Id.* ¶¶ 96–97. Plaintiff alleges

"emotional distress, fear, anxiety, and apprehension from the threatened arrest and unclear status of [the] [W]anted." *Id.* ¶ 99.

In her Amended Complaint, Plaintiff cites *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022), for the legal proposition that "[t]he Eighth Circuit . . . implied that the manner in which St. Louis County typically applies the Wanteds System is unconstitutional . . . ." *Id.* ¶ 103. She argues she "was pulled over and arrested pursuant to a Wanted under these exact circumstances, [and] thus her arrest and the Wanteds System as applied to [Plaintiff] is [*sic*] unconstitutional." *Id.* ¶ 104.

## II. Procedural Background

On January 8, 2026, Plaintiff filed her Amended Complaint against Defendants Barnhouse (in his individual capacity), Washington University, St. Louis County, and Kuelker (in his individual capacity). (Doc. 43). The Amended Complaint contains six counts: unlawful seizure in violation of the Fourth and Fourteenth Amendments under Section 1983, First Amendment retaliation for exercising Fourth and Fifth Amendment rights under Section 1983, false arrest, intentional infliction of emotional distress, *Monell* liability for an unconstitutional custom or practice, and conspiracy to deprive Plaintiff of civil rights under Section 1983. *Id.*

Defendant St. Louis County filed its Answer to the Amended Complaint on January 20, 2026. (Doc. 46). On the same date, Defendant Kuelker filed his Motion to Dismiss himself as a Defendant, arguing he has qualified immunity and Plaintiff failed to state a claim in the counts in which he is named. (Doc. 48). On January 21, 2026, Defendants Washington University and Barnhouse filed their Motion to Dismiss Counts II, IV, V, and VII of the Amended Complaint, arguing Plaintiff failed to: (1) state a First Amendment retaliation claim, (2) sufficiently allege a *Monell* claim, (3) allege a meeting of the minds to support her conspiracy claim, and (4) allege the proper elements of an intentional infliction of emotional distress claim. (Doc. 51).

## LEGAL STANDARDS

### I. Motion to Dismiss

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) Motion, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); FED. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken*, 140 F.4th at 450 (internal citations omitted). Still, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### II. Qualified Immunity

A government official sued in his "individual capacit[y] under § 1983 may assert the affirmative defense of qualified immunity." *Cannon v. Dehner*, 1121 F.4th 580, 585 (8th Cir. 2024) (internal citations omitted). Qualified immunity protects "all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, a government official is protected "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Such a right is "clearly established" when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (internal citations omitted). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Accordingly, courts must make an "*individualized* analysis of *each* officer's alleged conduct." *Id.* (emphasis in original).

## III. ***Monell*** **Liability**

Municipal bodies may be liable for civil rights claims under Section 1983, but they bear responsibility only for their own conduct and not that of their employees. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Accordingly, "[t]he Supreme Court has set a high bar" for such claims, requiring "careful analysis . . . to avoid any risk that liability could be imposed under a theory of respondeat superior." *Id.* (internal citations omitted). "[Section] 1983 liability . . . may attach to a municipality if the violation resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise." *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (internal citations omitted). Further, the plaintiff "must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Id.* (internal quotations and citations omitted). The same is true for an alleged failure to train or supervise. *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

## DISCUSSION

### I. Claims Against Defendants Washington University and Barnhouse

Defendants Washington University and Barnhouse move to dismiss Counts II, IV, V, and VII of Plaintiff's Amended Complaint (Doc. 48).

#### A. Count II

In Count II, Plaintiff alleges Defendant Barnhouse retaliated against her in violation of the First Amendment. (Doc. 43 at 16). Plaintiff states she "exercised her Fifth Amendment right to counsel by refusing to submit to a custodial interrogation . . . [and] was detained and only released" when her attorney "stated he would ask her to come in for questioning." *Id.* ¶¶ 129–30. Plaintiff claims her detention was "an adverse action taken only because of [her] constitutionally protected speech by invoking her fifth amendment rights." *Id.* ¶ 132. Plaintiff further states she "invoked her Fourth Amendment right to 'walk away from questioning' by refusing to go to WUPD's station" and Defendant Barnhouse "then threatened to have [her] arrested . . . for refusing to make a voluntary statement at WUPD's station." *Id.* ¶¶ 133–34. Plaintiff claims this conduct was intended "to discourage or punish [her] for her constitutionally protected speech invoking her Fourth and Fifth Amendment rights." *Id.* ¶ 135.

To state a claim for First Amendment retaliatory arrest under Section 1983, a plaintiff must demonstrate: (1) he engaged in protected First Amendment activity, (2) the defendant "took an adverse action that would chill a person of ordinary firmness from continuing in that protected activity," (3) the defendant's retaliatory animus was the but-for cause of the plaintiff's injury, and (4) "the defendant lacked probable cause or arguable probable cause to arrest." *Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023).

Here, Plaintiff fails to allege she was "engaged in protected First Amendment activity." *Id.* Retaliation for the exercise of other constitutional rights not involving speech cannot be acted upon under the First Amendment, and courts analyze First Amendment retaliation as a separate cause of action. *See, e.g.*, *Wilkie v. Robbins*, 551 U.S. 537, 555–56 (2007). Further, as one of our sister courts has held, refusal to answer a law enforcement officer's question is not "speech" for purposes of the First Amendment. *McReynolds v. Hansen*, No. 22-cv-3219-LMP/DTS, 2025 WL 1082350, at *5 (D. Minn. Apr. 10, 2025). In Plaintiff's Amended Complaint, she claims her First Amendment rights were violated in that she was retaliated against for exercising her Fourth and Fifth Amendment rights, not her First Amendment rights. *See* (Doc. 43 at 16–17). Plaintiff quite obviously fails to allege a First Amendment retaliation claim.

**B. Count IV**

In Count IV, Plaintiff alleges Defendants Washington University and Barnhouse are liable for intentional infliction of emotional distress (IIED) because Defendant Barnhouse "threatened to have [Plaintiff] arrested," causing "deep anxiety, fear, and apprehension on a near daily basis." (Doc. 43 ¶¶ 160, 165).

Under Missouri law, an IIED claim must allege "extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ." *Id.* (internal citations and quotations omitted). To state an IIED claim without bodily harm, a plaintiff must allege a mental injury that is "medically diagnosable . . . [and] of sufficient severity so as to be medically significant." *In the Matter of W.N.*, 711 S.W.3d 892, 896 (Mo. Ct. App. 2025) (internal quotations and citations omitted). Missouri courts have found "very few

factual scenarios sufficient to support" an IIED claim. *Bloodworth v. Kansas City Bd. of Police Comm'rs*, 89 F.4th 614, 623 (8th Cir. 2023) (internal citations and quotations omitted). Particularly germane here is the Eighth Circuit's holding in *Bloodworth* that a police officer's threat of "further police action and investigation" after the plaintiff refused to comply with an officer's request was insufficient to establish an IIED claim. *Id.*

As in *Bloodworth*, Plaintiff has not alleged facts showing extreme and outrageous conduct by Defendants Washington University and Barnhouse. She also fails to allege any physical injury or any mental injury that is medically diagnosable and sufficiently severe to be medically significant. *See, e.g.*, *Kirsten v. Cape Royale at Ski Harbor Condo. Owners Ass'n Inc.*, No. 2:22-cv-04109-MDH, 2022 WL 7108312, at *3 (W.D. Mo. Oct. 12, 2022) (finding stress and anxiety insufficient to establish an IIED claim). Instead, Plaintiff alleges, in a conclusory manner, only "fear, apprehension, depression, anxiety, consternation, and emotional distress." (Doc. 43 ¶ 166). Thus, Count IV must be dismissed for Plaintiff's failure to state an IIED claim.

**C. Count V**

In Count V, Plaintiff claims Defendants Washington University and St. Louis County are liable under *Monell* for an unconstitutional custom or practice. (Doc. 43 at 22). Specifically, Plaintiff claims St. Louis County Police Department (STLCPD) has a history of "unconstitutional abuses of the Wanteds System," citing *Furlow v. Belmar*, 4:16-cv-254, and that she suffered injuries because of this abuse. *Id.* at 23–25.

To establish an unconstitutional custom, a plaintiff must show:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (internal citations omitted). For a pattern of unconstitutional conduct to qualify for *Monell* liability, it "must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal citations and quotations omitted).

At the motion to dismiss stage, the facts alleged "about each element of the claim [must] raise a right to relief above a speculative level," and "[c]onclusory assertions that are unsupported by facts will not satisfy this pleading standard." *See Jackson v. City of Maplewood*, No. 4:24-cv-1207-NCC, 2025 WL 2299393, at *7 (E.D. Mo. Aug. 7, 2025) (internal citations omitted); *Watkins*, 102 F.4th at 953. While a private entity may occasionally be subject to *Monell* liability, it may only be liable for its *own* unconstitutional policies or customs. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590–91 (8th Cir. 2004).

Here, Plaintiff fails to allege an unconstitutional policy or custom of Defendant Washington University.[1] Rather, Plaintiff focuses solely on the allegedly unconstitutional policies of STLCPD. (Doc. 43 ¶¶ 183–95). Plaintiff does not set forth any "continuing, widespread, persistent pattern of unconstitutional conduct" by WUPD and alleges only a single incident involving Plaintiff herself. (Doc. 43 ¶ 174). Accordingly, Count V must be dismissed.

**D. Count VII**

[1] Plaintiff argues Defendant Washington University is subject to *Monell* liability because it "holds itself out to the public as a legitimate police department," among other things. (Doc. 43 ¶¶ 178–81). Suffice it to say the Court is skeptical. In any event, the Court need not address that argument because Plaintiff otherwise clearly fails to allege a *Monell* claim.

In Count VII, Plaintiff states Defendants Washington University, Barnhouse, St. Louis County, and Kuelker conspired to deprive Plaintiff of her constitutional rights. (Doc. 43 ¶ 201). Plaintiff states Defendant Barnhouse "initiated a plan to unlawfully arrest and detain [Plaintiff] by issuing an unconstitutional Wanted," and "Defendant Kuelker joined the conspiracy when he took [Plaintiff] into custody based only on the [Wanted] entry with no independent generation of probable cause." *Id.* ¶¶ 204–05.

To state a claim for conspiracy, a plaintiff must allege "specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (internal citations omitted). "The plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016) (internal quotations and citations omitted). The facts must at least "give rise to the inference that there was such a meeting of the minds." *White v. Walsh*, 649 F.2d 560, 562 (8th Cir. 1981). A plaintiff fails to state a claim "[w]here the allegations are merely conclusory statements rather than specific facts." *Brimager v. City of Moscow Mills*, 706 F. Supp. 3d 838, 849 (E.D. Mo. 2023).

Here, Plaintiff fails to elaborate on her conspiracy theory. The only suggestions of a meeting of the minds in Plaintiff's Amended Complaint are that "Defendant Barnhouse initiated a plan" and "Defendant Kuelker joined the conspiracy." (Doc. 43 ¶¶ 204–05). These are conclusory statements, not specific facts. *See, e.g.*, *Brimager*, 706 F. Supp. 3d at 849. Count VII is dismissed.

## II. Claims Against Defendant Kuelker

Plaintiff names Defendant Kuelker in Count I, which alleges unlawful seizure in violation of the Fourth and Fourteenth Amendments under Section 1983, and in Count VII, which alleges conspiracy to deprive Plaintiff of civil rights under Section 1983. (Doc. 43 at 13–16, 26–28).

**A. Count I**

In Count I, Plaintiff claims Defendant Kuelker "arrested [Plaintiff] pursuant to the Wanted alone without making an independent determination of probable cause," thereby violating Plaintiff's Fourth Amendment right against unlawful seizure. *Id.* ¶ 123.

To state a claim for unlawful arrest under the Fourth Amendment, a plaintiff must allege the officer lacked probable cause to arrest the plaintiff. *Sheets v. Butera*, 389 F.3d 772, 777 (8th Cir. 2004). Probable cause is based on objective facts and whether the "totality of facts . . . would justify a prudent person in believing the individual . . . had committed . . . an offense at the time of the arrest." *Id.* The Supreme Court has made clear that misdemeanor violations provide probable cause for arrest. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (concluding officer had probable cause to arrest plaintiff when she did not wear her seatbelt).

Here, Plaintiff's claim that Defendant Kuelker arrested Plaintiff based only on the Wanted is contrary to her own Amended Complaint, which also alleges that Defendant Kuelker pulled Plaintiff over "due to her license plate being displayed in the rear window" in violation of Missouri law. (Doc. 43 ¶ 55).

Section 301.130.5 of the Missouri Revised Statutes requires license plates be "securely fastened to the motor vehicle . . . so that all parts thereof shall be plainly visible . . . [and] so that the reflective qualities thereof are not impaired[,]" and "[l]icense plates shall be fastened to all motor vehicles . . . on the front and rear of such vehicles . . . not less than eight nor more than forty-eight inches above the ground . . . ." MO. REV. STAT. § 301.130.5.

Plaintiff's Amended Complaint insists that her "license plate was fastened securely in her rear window" and "was clearly visible and legible," (Doc. 43 ¶ 56), but conspicuously does not address the statutory requirements that the license plate be fastened without impairing its reflective

qualities, on the rear of the vehicle, at a height of not less than eight inches and not more than forty-eight inches. A violation of any one of these remaining statutory requirements would be a basis for probable cause for Defendant Kuelker to believe that Plaintiff violated Section 301.130.5. Thus, the facts stated in the Amended Complaint that Defendant Kuelker pulled Plaintiff over "due to her license plate being displayed in the rear window" and denying Plaintiff's violation of only two of the various requirements of the applicable statute provide probable cause for Defendant Kuelker to have believed that Plaintiff violated Missouri law.

The Supreme Court has noted that, "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for *any offense*, not just the offense cited at the time of arrest." *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (emphasis added). Therefore, though Plaintiff alleges Defendant Kuelker ultimately stated he arrested Plaintiff based on the Wanted, (Doc. 43 ¶ 60), he possessed probable cause to arrest Plaintiff for violating Section 301.130.5 and the arrest was lawful. Count I is dismissed.

**B. Count VII**

In Count VII, Plaintiff claims Defendant Kuelker is liable for conspiracy to deprive her of her civil rights in violation of Section 1983. (Doc. 43 at 26–28). For the reasons explained *supra*, namely that Plaintiff fails to demonstrate a meeting of the minds among the alleged conspirators, the Court will grant Defendant Kuelker's Motion to Dismiss Count VII.

**C. Qualified Immunity**

Finally, in addition to Plaintiff's failure to state a claim against Defendant Kuelker, he is also immune from suit under the qualified immunity doctrine. A government official is entitled to qualified immunity unless a plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged

conduct." *Faulk*, 30 F.4th at 744. Such a right is "clearly established" when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno*, 58 F.4th at 1004. A right is *not* clearly established if the officer had "arguable probable cause" to make the arrest. *Brown v. City of St. Louis*, 40 F.4th 895, 901 (8th Cir. 2022) (internal citations and quotations omitted) ("[T]he issue of ***arguable*** probable cause is properly part of the resolution of qualified immunity's second prong, the clearly established prong.") (emphasis in original). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ryno*, 58 F.4th at 1006.

Here, Plaintiff fails to allege Defendant Kuelker violated Plaintiff's statutory or constitutional rights because, as already explained, Defendant Kuelker had probable cause to arrest Plaintiff for violating a Missouri statute. (Doc. 43 ¶ 56). Even if Defendant Kuelker was mistaken about Plaintiff's violation of Section 301.130.5, the pleadings support at least arguable probable cause for her arrest. *Ryno*, 58 F.4th at 1006.

Still, Plaintiff relies on *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022), throughout her Amended Complaint to argue, among other things, that STLCPD has a longstanding custom and practice of unconstitutionally applying the Wanteds System and her arrest pursuant to that system violated the Fourth Amendment. *See* (Doc. 43 ¶¶ 103, 106, 143, 185–90). In *Furlow*, the Eighth Circuit rejected a facial challenge to the Wanteds System. *Furlow*, 52 F.4th at 404. And for purposes of the Fourth Amendment and qualified immunity, *Furlow* neither invalidated probable cause arrests on Wanteds nor recognized a clearly established right to be free from a Wanted arrest.

First, the *Furlow* court relied on the Supreme Court's decision in *United States v. Hensley*, 469 U.S. 221 (1985), in which a police department issued a "wanted flyer" for the defendant and

an officer in a neighboring jurisdiction conducted a traffic stop based on the flyer and arrested the defendant. *Furlow*, 52 F.4th at 403 (citing *Hensley*, 469 U.S. at 223–25). "The Supreme Court found the traffic stop was constitutional because the officer who published the flyer had a 'reasonable suspicion' of Hensley's criminal activity and the officer who stopped Hensley reasonably relied on the flyer to make the stop." *Id.* (citing *Hensley*, 469 U.S. at 233–35). "[T]he Supreme Court noted that if the arresting officer lacked independent probable cause to effectuate the arrest . . . then that detention 'might well be so lengthy or intrusive as to exceed the permissible limits of a *Terry* stop.'" *Id.* (quoting *Hensley*, 469 U.S. at 235). According to *Furlow*, the Supreme Court "suggested" that if the defendant's arrest had been based only on the flyer, it "likely" would have violated the Fourth Amendment. *Id.* But the *Furlow* court went on to conclude, "*Hensley* demonstrates that while a wanted flyer is sufficient to justify a *Terry* stop . . . it is insufficient to support an arrest . . . unless there is a showing of probable cause." *Id.* (citing *Hensley*, 469 U.S. at 232, 233, 236).

Next, the *Furlow* court acknowledged "we are not free to ignore *United States v. Briley*, 726 F.2d 1301 (8th Cir. 1984)." *Furlow*, 52 F.4th at 405. In *Briley*, the St. Paul Police Department had a policy of issuing "probable cause pickups" for suspects, an officer issued such a notice for the defendant, and two other officers not otherwise involved in the investigation later arrested him on that notice. The *Briley* court found probable cause to support the arrest "'based on the collective knowledge of all the officers involved.'" *Furlow*, 52 F.4th at 405 (quoting *Briley*, 726 F.2d at 1305–06). Based on *Briley*, the *Furlow* court held that the defendant officers who arrested Furlow on the Wanted were entitled to qualified immunity for want of a clearly established right not to be arrested on a Wanted. *Id.*

With this backdrop, *Furlow* generated three different opinions from a three-judge panel. *See Furlow*, 52 F.4th at 407 (Shepherd, J., concurring in part and dissenting in part); *id.* at 408 (Stras, J., concurring in part and concurring in the judgment). As if to drive home the point that there is no clearly established right to be free from a Wanted arrest, the opinion of the court did not promulgate a discernable rule, much less a clearly established right. *Compare Furlow*, 52 F.4th at 404 ("The Wanteds System is broad enough to encompasses [*sic*] situations that do not violate the Constitution . . . ."), *with id.* at 403 ("But even in the investigatory stop context, a *Terry* stop based on a Wanted is not always lawful.") (internal citations omitted); *with id.* ("[R]egardless of the reasons for the creation of the SLCPD's Wanteds System or its continued purpose, arrests may be effectuated under this system that do not violate the Constitution."); *with id.* ("Like the flyer in *Hensley*, Wanteds cannot provide a sufficient basis to justify the arrest and prolonged detention of a suspect under the Constitution."). In any event, all of this is *dicta*, as the *Furlow* court did not find a Fourth Amendment violation and, accordingly, did not reverse the district court's grant of summary judgment in favor of the defendant police officers. Instead, it held that qualified immunity applied because there is no clearly established right to be free from arrest pursuant to the Wanteds System. *Id.* at 404–05.

For these reasons, Plaintiff cannot meet either prong of the qualified immunity test, and Defendant Kuelker is immune from suit.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Washington University and Barnhouse's Motion to Dismiss (Doc. 48) is **GRANTED**, Counts II, IV, and VII of the Amended Complaint are dismissed, and Count V is dismissed as to Defendant Washington University.

**IT IS FINALLY ORDERED** that Defendant Kuelker's Motion to Dismiss (Doc. 50) is **GRANTED**, Counts I and VII are dismissed as to Defendant Kuelker, and Defendant Kuelker is dismissed from the case.

So ordered this 26th day of August 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE