UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KAITLYN KILLGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01407-CMS |
| | ) | |
| WASHINGTON UNIVERSITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant St. Louis County's Motion for Judgment on the Pleadings (Doc. 67). For the reasons stated herein, the Motion is granted.

**BACKGROUND**

**I. Factual Background**

The following allegations in the Amended Complaint (Doc. 43) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

On April 27, 2024, Plaintiff Kaitlyn Killgo attended an anti-war protest on Defendant Washington University's campus. (Doc. 43 ¶ 33). Plaintiff denies that she took or possessed any property of the Washington University Police Department (WUPD), nor did Plaintiff know of "anyone taking any property of WUPD." *Id.* ¶¶ 34–36.

On August 12, 2024, Plaintiff participated in another protest. *Id.* ¶ 42. She alleges that, at that protest, "either [Defendant] Detective Jeffrey Barnhouse or Marc Wasem," both WUPD officers, shouted "Killgo!" and "We want our helmet back!" from an unmarked black Suburban vehicle. *Id.* ¶¶ 43–48.

On Labor Day weekend 2024, Plaintiff and her friend drove through the municipality of Eureka, Missouri, where Defendant Officer Torre Kuelker conducted a traffic stop. *Id.* ¶¶ 50–53. Defendant Kuelker stated "he had pulled her over due to her license plate being displayed in the rear window." *Id.* ¶ 55. At the time, Plaintiff's "license plate was fastened securely in her rear window [and] [t]he entirety of her license plate was clearly visible and legible." *Id.* ¶ 56. When Plaintiff's friend refused to provide identification, "Defendant Kuelker revealed that he had pulled the car over because there was a Wanted on [Plaintiff]'s vehicle that necessitated him identifying everyone in the car." *Id.* ¶ 57.

Thereafter, Defendant Kuelker, without speaking to Defendant Barnhouse "or any member of WUPD," informed Plaintiff that "WUPD officers wanted to speak with her," detained her, and took her to the Eureka Police Department. *Id.* ¶¶ 59–61, 63. Plaintiff contacted a volunteer attorney who "learned that WUPD and Eureka police communicated solely about transferring [Plaintiff] into WUPD custody" and that Defendant Barnhouse "had put out a Wanted" for Plaintiff. *Id.* ¶¶ 67–68. Plaintiff was released after approximately four hours in custody when the volunteer attorney represented that Plaintiff would submit to an interview with WUPD. *Id.* ¶ 73.

Upon being released, Plaintiff retained counsel who spoke with Defendant Barnhouse. *Id.* ¶¶ 74–75. Defendant Barnhouse asked Plaintiff numerous times to "come in for an interview," which Plaintiff refused. *Id.* ¶¶ 76–81. Defendant Barnhouse then told Plaintiff she "had to" come in and, if she did not, he would "put out the Wanted again." *Id.* ¶¶ 82, 84. After speaking with Defendant Barnhouse's supervisor, Plaintiff's counsel learned that WUPD believed Plaintiff had stolen a police riot helmet. *Id.* ¶¶ 88–89. Plaintiff "submitted a Sunshine Request to receive information about her arrest and the WUPD policies," which Defendant Washington University denied because it is a private institution not subject to such requests. *Id.* ¶¶ 96–97. Plaintiff alleges

"emotional distress, fear, anxiety, and apprehension from the threatened arrest and unclear status of [the] [W]anted." *Id.* ¶ 99.

In her Amended Complaint, Plaintiff cites *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022), for the legal proposition that "[t]he Eighth Circuit . . . implied that the manner in which St. Louis County typically applies the Wanteds System is unconstitutional . . . ." *Id.* ¶ 103. She argues she "was pulled over and arrested pursuant to a Wanted under these exact circumstances, [and] thus her arrest and the Wanteds System as applied to [Plaintiff] is [sic] unconstitutional." *Id.* ¶ 104.

## II. Procedural Background

On January 8, 2026, Plaintiff filed her Amended Complaint against Defendants Barnhouse (in his individual capacity), Washington University, St. Louis County, and Kuelker (in his individual capacity). (Doc. 43). The Amended Complaint contains six counts: Unlawful seizure in violation of the Fourth and Fourteenth Amendments under Section 1983, First Amendment retaliation for exercising Fourth and Fifth Amendment rights under Section 1983, false arrest, intentional infliction of emotional distress, *Monell* liability for an unconstitutional custom or practice, and conspiracy to deprive Plaintiff of civil rights under Section 1983. *Id.*

Defendant St. Louis County filed its Answer to the Amended Complaint on January 20, 2026. (Doc. 46). On the same date, Defendant Kuelker filed his Motion to Dismiss himself as a Defendant, arguing he has qualified immunity and Plaintiff failed to state a claim in the counts in which he is named. (Doc. 48). On January 21, 2026, Defendants Washington University and Barnhouse filed their Motion to Dismiss Counts II, IV, V, and VII of the Amended Complaint, arguing Plaintiff failed to: (1) state a First Amendment retaliation claim, (2) sufficiently allege a *Monell* claim, (3) allege a meeting of the minds to support her conspiracy claim, and (4) allege the proper elements of an intentional infliction of emotional distress claim. (Doc. 51).

On August 26, 2026, this Court issued a Memorandum and Order granting the Motions to Dismiss. The Court dismissed Defendant Kuelker from the case and dismissed Count II, the retaliation claim against Defendant Barnhouse; Count IV, the intentional infliction of emotional distress claim against Defendants Washington University and Barnhouse; Count V, the *Monell* claim as to Defendant Washington University; and Count VII, the conspiracy claim. (Doc. 60).

On October 23, 2026, Defendant St. Louis County filed the instant Motion for Judgment on the Pleadings on Counts V and VII of the Amended Complaint. (Doc. 67). In its Memorandum in Support, Defendant St. Louis County argues that Count V, the *Monell* claim, should be dismissed as to St. Louis County because Plaintiff: (1) fails to allege an underlying constitutional violation, (2) fails to allege a custom or practice violating the constitution for *Monell* purposes, and (3) impermissibly asserts Defendant St. Louis County is vicariously liable for Defendant Barnhouse's actions. (Doc. 68). Although this Court previously dismissed Count VII, the conspiracy claim, in its entirety in its Memorandum and Order of August 26, Defendant St. Louis County also seeks judgment on that count because it is the only remaining Defendant and could not have conspired with itself. (Doc. 67 at 3).

On November 6, 2026, Plaintiff filed her Response in Opposition to Defendant County's Motion for Judgment on the Pleadings. (Doc. 69).

## LEGAL STANDARDS

### I. Motion for Judgment on the Pleadings

A defendant may move for judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is reviewed "under the same standard that governs 12(b)(6) motions." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (internal citations omitted). Accordingly, to survive a Rule

12(c) motion for judgment on the pleadings, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

"When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint" and "must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor. Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). Still, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II. *Monell* Liability

Municipal bodies may be liable for civil rights claims under Section 1983, but they bear responsibility only for their own conduct and not that of their employees. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 690–91 (1978)). Accordingly, "[t]he Supreme Court has set a high bar" for such claims, requiring "careful analysis . . . to avoid any risk that liability could be imposed under a theory of respondeat superior." *Id.* (internal citations omitted). "[Section] 1983 liability . . . may attach to a municipality if the violation resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise." *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (internal citations omitted). Further, the plaintiff "must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Id.* (internal quotations and citations omitted). The same is true for an alleged failure to train or supervise. *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

## DISCUSSION

### I. Count V

In Count V, Plaintiff claims Defendant St. Louis County is liable under *Monell* for an unconstitutional custom or practice. (Doc. 43 at 22). Specifically, Plaintiff claims the St. Louis County Police Department has a history of "unconstitutional abuses of the Wanteds System," citing *Furlow v. Belmar*, 4:16-cv-254, and that she suffered injuries because of this abuse. *Id.* at 23–25.

> To establish an unconstitutional custom, a plaintiff must show:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (internal citations omitted). For a pattern of unconstitutional conduct to qualify for *Monell* liability, it "must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal citations and quotations omitted). Further, "absent a constitutional violation by a [municipal] employee, there can be no" Section 1983 or *Monell* liability. *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018).

At this stage, the facts alleged "about each element of the claim [must] raise a right to relief above a speculative level," and "[c]onclusory assertions that are unsupported by facts will not satisfy this pleading standard." *See Jackson v. City of Maplewood*, No. 4:24-cv-1207-NCC, 2025 WL 2299393, at *7 (E.D. Mo. Aug. 7, 2025) (internal citations omitted); *Watkins*, 102 F.4th at 953.

The underlying constitutional violations alleged by Plaintiff are: (1) the issuance of a Wanted without probable cause, and (2) Plaintiff's unlawful arrest under the Fourth Amendment. (Doc. 43 ¶¶ 174–94). For the reasons explained below, Plaintiff fails to allege an underlying constitutional violation.

**The Issuance of the Wanted Did Not Violate Plaintiff's Constitutional Rights.**

The law regarding Fourth Amendment searches and seizures is neither new nor complex. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See* U.S. Const. amend. IV; *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Fladten*, 230 F.3d 1083 (8th Cir. 2000); *Kleinholz v. United States*, 339 F.3d 674 (8th Cir. 2003); *District of Columbia v. Wesby*, 583 U.S. 48 (2018).

"Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *Wesby*, 583 U.S. at 56 (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). An arrest is reasonable if a police officer has probable cause for the arrest. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). An exception to the probable cause requirement is when a police officer conducts only an investigatory *Terry* stop, as opposed to an arrest. A *Terry* stop requires only reasonable suspicion, a "lower threshold than probable cause." *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Navarrete-Barron*, 192 F.3d 786 (8th Cir. 1999); *United States v. Ortiz-Monroy*, 332 F.3d 525 (8th Cir. 2003); *United States v. Martinez*, 462 F.3d 903 (8th Cir. 2006); *Sturgeon v. Faughn*, 36 F.4th 804 (8th Cir. 2022).

Throughout her Amended Complaint, Plaintiff relies on *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022), to argue, among other things, that the St. Louis County Police Department has a longstanding custom and practice of unconstitutionally issuing Wanteds and her arrest pursuant to the Wanted system violated the Fourth Amendment. *See* (Doc. 43 ¶¶ 103, 106, 143, 185–90).

The *Furlow* court expended a lot of ink on the issue of whether an arrest pursuant to a Wanted violates the Constitution. *Compare Furlow*, 52 F.4th at 404 ("The Wanteds System is broad enough to encompasses [sic] situations that do not violate the Constitution . . . ."); *with id.* at 403 ("But even in the investigatory stop context, a *Terry* stop based on a Wanted is not always lawful.") (internal citations omitted); *with id.* ("[R]egardless of the reasons for the creation of the SLCPD's Wanteds System or its continued purpose, arrests may be effectuated under this system that do not violate the Constitution."); *with id.* ("Wanteds cannot provide a sufficient basis to justify the arrest and prolonged detention of a suspect under the Constitution.").

Ultimately, the *Furlow* court rejected a facial challenge to the Wanted system and did not invalidate probable cause arrests on Wanteds. *Furlow*, 52 F.4th at 404. Instead, it held that

qualified immunity applied because there is no clearly established right to be free from arrest pursuant to a Wanted. *Id.* at 404–05.

Here, rather than addressing the probable cause that supported her arrest, Plaintiff persists in relying on *Furlow* for the proposition that Defendant St. Louis County "continues to implement a pattern, practice, or custom of issuing Wanteds in an unconstitutional manner, and that Plaintiff's constitutional rights were in fact violated because of an unconstitutional Wanted." (Doc. 69 at 2). In her Response in Opposition to Defendant St. Louis County's Motion for Judgment on the Pleadings, Plaintiff maintains that this Court's previous finding of arguable probable cause for her arrest "has no impact on whether Defendant Barnhouse had probable cause to issue the Wanted in the first instance, or on whether Plaintiff could be detained for a prolonged period of time because of that Wanted." *Id.* Plaintiff's argument exemplifies the confusion engendered by *Furlow*.

The problem with Plaintiff's analysis is that the fact that a Wanted was issued is a distraction and not directly relevant to the lawfulness of Plaintiff's arrest and detention. Pursuant to the longstanding caselaw of the United States Supreme Court and the Eighth Circuit, the issue is not whether a Wanted was improvidently issued; the issue is whether Plaintiff's arrest was supported by probable cause. *See supra*; *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) (citing *California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991), for the proposition that "there is no seizure without that person's actual submission . . ." or a police officer's use of physical force). In the end, the *Furlow* court came to the same conclusion: "[W]hile a wanted flyer is sufficient to justify a *Terry* stop . . . it is insufficient to support an arrest . . . *unless there is a showing of probable cause*." 52 F.4th at 403 (citing *United States v. Hensley*, 469 U.S. 221 (1985)) (emphasis added).

**Probable Cause Supported Plaintiff's Arrest.**

To state a claim for unlawful arrest under the Fourth Amendment, a plaintiff must allege the officer lacked probable cause to arrest him. *Sheets v. Butera*, 389 F.3d 772, 777 (8th Cir. 2004). Probable cause is based on objective facts and whether the "totality of facts . . . would justify a prudent person in believing the individual . . . had committed . . . an offense at the time of the arrest." *Id.* The Supreme Court has made clear that misdemeanor violations provide probable cause for arrest. *See, e.g.*, *Atwater*, 532 U.S. at 354 (concluding officer had probable cause to arrest plaintiff when she did not wear her seatbelt).

This Court already determined in its Memorandum and Order of August 26 that, on the face of Plaintiff's Amended Complaint, her arrest was supported by probable cause. (Doc. 60). The Amended Complaint alleges that Defendant Kuelker stated he pulled Plaintiff over "due to her license plate being displayed in the rear window" in violation of Missouri law. (Doc. 43 ¶ 55). The Court accepts this allegation as true, as it must. *See Brokken*, 140 F.4th at 450; *Wishnatsky*, 433 F.3d at 610. In fact, Plaintiff does not deny that her license plate was displayed in the rear window. Rather, the Amended Complaint adds only that Plaintiff's "license plate was fastened securely in her rear window" and "was clearly visible and legible." (Doc. 43 ¶ 56). The Court also accepts these allegations as true. *See Brokken*, 140 F.4th at 450; *Wishnatsky*, 433 F.3d at 610. But those are not the only requirements of the statute prohibiting the improper display of a license plate.

Section 301.130.5 of the Missouri Revised Statutes requires license plates be "securely fastened to the motor vehicle . . . so that all parts thereof shall be plainly visible . . . [and] so that the reflective qualities thereof are not impaired[,]" and "[l]icense plates shall be fastened to all

motor vehicles . . . on the front and rear of such vehicles . . . not less than eight nor more than forty-eight inches above the ground . . . ." Mo. Rev. Stat. § 301.130.5.

The Amended Complaint does not address any of the other bases for Defendant Kuelker to have pulled Plaintiff over due to her license plate being displayed in the rear window: That the license plate be fastened without impairing its reflective qualities, on the rear of the vehicle, at a height of not less than eight inches and not more than forty-eight inches. Accepting Plaintiff's allegations as true and "draw[ing] on its judicial experience and common sense," *Braden*, 588 F.3d at 594, the Court concludes that the facts stated in the Amended Complaint that Plaintiff was pulled over "due to her license plate being displayed in the rear window" provided probable cause for Plaintiff's arrest.

Plaintiff now argues in her Response in Opposition that not only her initial arrest, but also her continued detention, violated the Fourth Amendment. (Doc. 69 at 2). The Amended Complaint, construed in the light most favorable to Plaintiff, *see Wishnatsky*, 433 F.3d at 610, appears to raise a claim for Plaintiff's detention, though the focus is on her arrest. In any event, her detention, like her arrest, did not violate the Fourth Amendment.

The Amended Complaint alleges that Plaintiff was released with the assistance of a volunteer attorney after approximately four hours in custody. (Doc. 43 ¶ 73). The Supreme Court, the Eighth Circuit, and the State of Missouri have made clear that detention for four hours pursuant to a probable cause arrest does not violate the Constitution and is otherwise lawful. *See, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) (state authorities must, in most circumstances, provide probable cause determination within 48 hours); *Duhe v. City of Little Rock*, 902 F.3d 858, 868 (8th Cir. 2018) (twelve-hour detention was lawful); Mo. Rev. Stat. § 544.170 ("All persons arrested and confined in any jail . . . without warrant . . . for any alleged breach of the peace or

other criminal offense, or on suspicion thereof, shall be discharged . . . within twenty-four hours from the time of such arrest.").

Finally, the Supreme Court also has instructed that, "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for *any offense*, not just the offense cited at the time of arrest." *Wesby*, 583 U.S. at 54 n.2 (2018) (emphasis added). Therefore, though Plaintiff alleges the arresting officer ultimately stated he arrested and detained Plaintiff based on the Wanted, (Doc. 43 ¶ 60), he possessed probable cause to arrest and detain Plaintiff for violating Section 301.130.5, and the arrest and detention were lawful.

## II. Count VII

Defendant St. Louis County also seeks judgment on the pleadings as to Count VII of the Amended Complaint, in which Plaintiff claims Defendants Washington University, Barnhouse, Kuelker, and St. Louis County conspired to deprive Plaintiff of her constitutional rights. (Doc. 43 ¶ 201).

In its previous Memorandum and Order, this Court dismissed Count VII because Plaintiff failed to allege specific facts demonstrating a meeting of the minds among the alleged conspirators. *See* (Doc. 60 at 10). For the same reason, the Court now grants judgment on the pleadings on Count VII as to Defendant St. Louis County. Also, given that Count VII already has been dismissed as to all other Defendants, St. Louis County could not be a co-conspirator in a conspiracy of one. *See Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005) (stating a "government entity cannot conspire with itself").[1]

---

[1] In any event, Plaintiff, in her Response in Opposition, concedes she "does not contest the dismissal of Count VII for conspiracy." (Doc. 69 at 13).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Louis County's Motion for Judgment on the Pleadings (Doc. 67) is **GRANTED** and Counts V and VII of the Amended Complaint are dismissed.

So ordered this 13th day of November 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE